O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LECK SIGNAVONG, | ) | NO. EDCV 10-917 MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on June 28, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On July 22, 2010, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on March 30, 2011 in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, remanding the matter for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for

further administrative proceedings.   The Court has taken the parties'
Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability, DIB, and
SSI on February 5, 2008.  (Administrative Record ("A.R.") 9, 151, 128.)
Plaintiff, who was born on June 12, 1953 (A.R. 140, 147, 151),[1] claims
to have been disabled since December 20, 2004, due to paralysis of the
left side of his body, left leg pain, left arm numbness, "the spinal
cord," memory loss, hypertension, weakness, dizziness, depression (A.R.
13, 156),   as well as difficulties "lifting, squatting, bending,
standing, walking, sitting, kneeling, climbing stairs, seeing, following
instructions, concentrating, completing tasks, and getting along with
others" (A.R. 13, 175).   Plaintiff has past relevant work ("PRW")
experience as a security guard.  (A.R. 17.)

After the Commissioner denied plaintiff's claim initially and upon
reconsideration (A.R. 55-66), plaintiff requested a hearing (A.R. 68).
On September 15, 2009, and November 18, 2009, plaintiff, who was
represented by counsel, appeared and testified at a hearing before
Administrative Law Judge Mason D. Harrell, Jr. (the "ALJ").  (A.R. 19-
50.)   At the November administrative hearing, testimony was given by
medical expert Dr. Michael Kania, M.D. and vocational expert Corinne J.
Porter.   On December 28, 2009, the ALJ denied plaintiff's claim (A.R.

---

[1]   On the alleged disability onset date, plaintiff was 51 years
old, which is defined as a person closely approaching advanced age.  20
C.F.R. §§ 404.1563, 416.963.

2

9-18), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since December 20, 2004, the alleged onset date of plaintiff's disability.  (A.R. 11.)  The ALJ also determined that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2008.  (*Id.*)  The ALJ concluded that plaintiff has the following severe impairments:  degenerative joint disease of the left hip, depression, and post-traumatic stress disorder.[2]  (*Id.*)  The ALJ further concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.  §§  404.1520(d),  404.1525,  404.1526,  416.920(d),  416.925, 416.926).  (A.R. 12.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  Specifically, the ALJ found that:

> [plaintiff] can stand and/or walk for 4 to 6 hours in an 8-
> hour workday, for one hour at a time without the use of a

---

[2]    The ALJ determined that plaintiff's alleged impairment involving his left shoulder is not severe.  (A.R. 11.)

3

1    cane; he can occasionally stoop or bend; he has no sitting
2    limitations; he can not climb, balance, or work at heights; he
3    can occasionally to frequently push and pull with his left
4    arm; he would have slight difficulty operating hand controls
5    and using tools with his left hand; he can do frequent simple
6    gripping and fine coordinated movements with his left hand and
7    fingers; he has unrestricted use of the right upper extremity;
8    he can lift and/or carry 15 pounds frequently and 30 pounds
9    occasionally; he can do simple tasks in a non-public work
10   setting, with occasional contact with supervisors and
11   coworkers; and he may miss work 1-2 times per month.

13   (A.R. 13.)

15        The ALJ concluded that plaintiff was capable of performing his PRW
16   as a security guard. (A.R. 17.)  The ALJ determined that plaintiff's
17   PRW, as generally performed, does not require the performance of work-
18   related activities precluded by plaintiff's RFC. (*Id.*)  In making this
19   finding, the ALJ relied on the testimony of the vocational expert.
20   (*Id.*)   The ALJ also noted that his finding was supported by the
21   testimony of medical expert Dr. Kania. (*Id.*)  Accordingly, the ALJ
22   concluded that plaintiff has not been under a disability within the
23   meaning of the Social Security Act from December 20, 2004, the alleged
24   disability onset date, through the date of his decision. (A.R. 9, 17-
25   18.)
26   ///
27   ///
28   ///

4

1

2

## STANDARD OF REVIEW

3        Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

4    decision to determine whether it is free from legal error and supported

5    by substantial evidence in the record as a whole.  Orn v. Astrue, 495

6    F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant

7    evidence as a reasonable mind might accept as adequate to support a

8    conclusion.'"  Id. (citation omitted).  The "evidence must be more than

9    a mere scintilla but not necessarily a preponderance."  Connett v.

10   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the

11   record can constitute substantial evidence, only those 'reasonably drawn

12   from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063,

13   1066 (9th Cir. 2006)(citation omitted).

14

15        Although this Court cannot substitute its discretion for that of

16   the Commissioner, the Court nonetheless must review the record as a

17   whole, "weighing both the evidence that supports and the evidence that

18   detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of

19   Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also

20   Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

21   responsible for determining credibility, resolving conflicts in medical

22   testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d

23   1035, 1039 (9th Cir. 1995).

24

25        The Court will uphold the Commissioner's decision when the evidence

26   is susceptible to more than one rational interpretation.  Burch v.

27   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may

28   review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ improperly found that plaintiff could perform his PRW as a security guard.  (Joint Stipulation ("Joint Stip.") at 4-10, 14-17.)

**I.   <u>The ALJ Committed No Reversible Error In Determining That Plaintiff Could Perform His PRW As A Security Guard</u>.**

At step four of the sequential evaluation process, a claimant bears the burden of proving that he or she can no longer perform his or her PRW.   <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001). Notwithstanding claimant's burden, the ALJ still has a duty to make the requisite factual findings to support his or her conclusion regarding plaintiff's ability to perform his or her PRW. *Id.*  A claimant must be able to perform:  (1) "[t]he actual functional demands and job duties of a particular past relevant job"; or (2) "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."   *Id.* at 845 (citations omitted).

6

1  Accordingly, the ALJ must make "specific findings as to the claimant's
2  [RFC], the physical and mental demands of the [PRW], and the relation of
3  the [RFC] to the past work."  *Id.*

4

5      In general, an ALJ should consider first whether claimant can
6  perform his or her PRW as *actually* performed and then as *generally*
7  performed.  Pinto, 249 F.3d at 845.  Typically, the best source for how
8  a job is generally performed is the Dictionary of Occupational Titles
9  (the "DOT").  *Id.*; Social Security Ruling ("SSR") 00-4p, 2000 WL
10 1898704, at *2 (noting that "we rely primarily on the DOT . . . for
11 information about the requirements of work in the national economy").[3]
12 Although occupational evidence provided by the vocational expert is
13 generally expected to be consistent with the DOT, "[n]either the DOT nor
14 the [vocational expert's] evidence automatically 'trumps' when there is
15 a conflict."  SSR 00-4p, 2000 WL 1898704, at *2.

16

17     The ALJ has an affirmative responsibility to ask whether a conflict
18 exists between the testimony of a vocational expert and the DOT.  SSR
19 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152
20 (9th Cir. 2007).  If there is a conflict between the DOT and testimony
21 from the vocational expert, an ALJ may accept testimony from a
22 vocational expert that contradicts the DOT, but "the record must contain
23 'persuasive evidence to support the deviation.'" Pinto, 249 F.3d at 846
24 (*quoting* Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  The

25

26     [3]  Social Security Rulings do not have the force of law.
   Nevertheless, they "constitute Social Security Administration
27 interpretations of the statute it administers and of its own
   regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).
28 Accordingly, they are given deference, "unless they are plainly
   erroneous or inconsistent with the Act or regulations."  *Id.*

7

1   ALJ must resolve any conflict by determining whether the vocational
2   expert's explanation is reasonable and provides sufficient support to
3   justify deviating from the DOT.   SSR 00-4p, 2000 WL 1898704, at *4;
4   Massachi, 486 F.3d at 1153.   An ALJ's failure to do so, however, can be
5   harmless error when there is no conflict or the vocational expert
6   provides a basis for relying on the his or her testimony rather than on
7   the DOT.   *Id.* at 1154 n.19.

8

9        At the November 18, 2009 administrative hearing, the ALJ asked the
10  vocational expert whether a hypothetical individual who was limited, as
11  is plaintiff, to, *inter alia*, standing/walking for four to six hours out
12  of an eight-hour workday, but not more than one hour at a time, and
13  simple tasks that are performed in a nonpublic setting, could perform
14  plaintiff's PRW.   (A.R. 47.)   The vocational expert testified that a
15  hypothetical individual with the limitations described by the ALJ would
16  be able to perform plaintiff's PRW as generally performed but not as
17  actually performed.   (A.R. 47-48.)   When asked by the ALJ if her
18  testimony was "per the DOT," the vocational expert answered "Yes."
19  (A.R. 48.)   In response to the ALJ's question of how many such positions
20  there are in the region and nation, the vocational expert testified
21  that, after eroding the numbers by 90 percent, there are "3,000
22  positions in the region, and 20,000 nationally." (*Id.*)   The vocational
23  expert further testified that "the kind of security guard jobs [she is]
24  referring to, would be guarding a construction site, which is -- seems
25  to be a very popular position right now.   One that is typically sitting
26  in their car.   And -- or an industrial site, as well." (*Id.*)

27

28       After the ALJ's examination, plaintiff's counsel elicited the

8

following testimony from the vocational expert:

Q    Does the limitation to simple [tasks] impact the ability
     of the security guard jobs?

A    No, I don't think it does.

Q    I did notice that you had indicated it as a semiskilled
     job.

A    It is a semiskilled job with [a Specific Vocational
     Preparedness ("SVP") score of] three, which is the lowest
     range of, of semiskilled work.  And the way that was
     posed as simple wasn't posed as simple unskilled work or
     simple repetitive work; it was posed as simple work.  And
     I believe that such as the job is performed, there's no
     reports required in that type of watch guard or security
     guard.

Q    And the person who's sitting in his car, isn't it his job
     to actually approach and confront or address people from
     the public that may look like they shouldn't be there?

A    No, that's not actually the way that is performed.   It
     would be making a call to the police.

Q    So there's no interaction at all with the guard and the,
     and the member of the public?  It's just a reporting type
     function and calling the police?

9

1    A    If the public would come up and approach the guard, but

2         that is not a requirement of a job where one is, is

3         earning minimum wage or $8 an hour, is to chase someone

4         or approach somebody about -- when they're on property

5         such as that.  It would be to notify.

6

7    (A.R. 48-49.)

8

9         Upon re-examination, the ALJ elicited the following testimony from

10   the vocational expert:

11

12   Q    Your, your testimony's consistent with the DOT, right?

13

14   A    As I explained, yes.

15

16   ALJ: As you explained.  Okay. . . .

17

18   (A.R. 48-49.)  The ALJ relied on the vocational expert's testimony in

19   finding that plaintiff is able to perform his PRW as generally

20   performed, because plaintiff's PRW does not require the performance of

21   work-related activities precluded by plaintiff's RFC.  (A.R. 17.)

22

23        Contrary to plaintiff's contention, the ALJ did not err in relying

24   on the vocational expert's testimony that plaintiff could perform his

25   PRW as a security guard.[4]  As an initial matter, the ALJ complied with

26   _____

27        [4]    Plaintiff claims that the neither the ALJ nor the vocational
     expert identified the DOT number for the job of security guard.  (Joint
28   Stip. at 5.)   However,  as  defendant  properly  notes,  plaintiff's

10

his affirmative duty to confirm that the vocational expert's testimony
was consistent with the information provided in the DOT.  SSR 00-4p,
2000 WL 1898704, at *4 ("When a [vocational expert] provides evidence
about the requirements of a job or occupation, the [ALJ] has an
affirmative responsibility to ask about any possible conflict between
that [vocational expert's] testimony and information provided in the
DOT.  In these situations, the [ALJ] will:  Ask the [vocational expert]
if the evidence he or she has provided conflicts with information
provided in the DOT").  Here, after the vocational expert testified that
a hypothetical individual with plaintiff's limitations could perform
plaintiff's PRW as generally performed but not as actually performed,
the ALJ asked the vocational expert whether her testimony was consistent
with the DOT.  The vocational expert replied, "Yes."

    In addition, after plaintiff's counsel examined the vocational
expert, and the vocational expert provided additional information
regarding the requirements of the security guard position at an
industrial or construction site, the ALJ again asked the vocational
expert whether her testimony was consistent with the DOT.  Again, the
vocational expert responded in the affirmative.  The ALJ, therefore,
satisfied his duty to verify that the vocational expert's testimony
regarding plaintiff's capacity to perform his PRW was consistent with
the DOT.  As there was no apparent inconsistency between the DOT and the
vocational expert's testimony, the ALJ was under no duty to make

---

assertion is incorrect, because the vocational expert submitted a Past
Relevant Work Summary ("Summary") that identified the correct DOT number
for a security guard position and referred to this Summary when she
testified at the administrative hearing.  (Joint Stip. at 12 n.3, *see*
A.R. 48, 226.)

11

additional inquiries.  *See* <u>Michelson-Wurm v. Comm'r SSA</u>, 285 Fed. Appx. 482, 486 (9th Cir. 2008)(stating that an ALJ "must clarify the discrepancy . . . *only where there is an apparent unresolved conflict* that arises between the vocational expert's testimony and the DOT")(emphasis in original); *see also* SSR 00-4p, at *4 (referring to an apparent conflict).  Accordingly, based on the vocational expert's testimony, the ALJ concluded that plaintiff's PRW does not require the performance of work-related activities precluded by plaintiff's RFC.

However, even assuming *arguendo*, that there was an apparent unresolved conflict between the vocational expert's testimony and the DOT, as plaintiff contends, an ALJ "may rely on expert testimony which contradicts the DOT [so long as] the record contains persuasive evidence to support the deviation." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1042 (9th Cir. 2008)(citations omitted); *see* <u>Massachi</u>, 486 F.3d at 1154 n.19 (noting that there is no reversible error if there was no conflict or the vocational expert "provided sufficient support for her conclusion so as to justify any potential conflicts"); <u>Johnson</u>, 60 F.3d at 1435-36 (noting that DOT classifications are rebuttable and are not the sole source of admissible information concerning jobs).  Evidence sufficient to permit such a deviation may be either specific findings of fact regarding plaintiff's RFC, or inferences drawn from the context of the expert's testimony.  <u>Light v. SSA</u>, 119 F.3d 789, 793 (9th Cir. 1997).

The vocational expert's testimony provides sufficient support for any alleged conflict with the DOT.  As noted above, the vocational expert testified that a hypothetical individual with plaintiff's limitations, including, *inter alia,* standing/walking for not more than

12

one hour at a time and simple tasks in a non-public work setting, could perform plaintiff's PRW, as generally performed, as a security guard. Specifically, after reducing the occupational base by 90 percent based on plaintiff's limitations,[5] the vocational expert testified that plaintiff could perform the job of security guard at an industrial or construction site, which she noted was typically performed while seated in a car.  The vocational expert's testimony shows that she considered plaintiff's RFC limitations and the specific requirements of the job of security guard at an industrial or construction site in determining that plaintiff could perform his PRW. *See* Johnson, 60 F.3d at 1435 (finding persuasive evidence to support alleged deviation when there was "testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of [plaintiff]").


Furthermore, contrary to plaintiff's contention, the vocational expert sufficiently addressed any alleged inconsistency and/or deviation between the DOT requirements for a security guard and plaintiff's RFC limitations.  As recognized by SSR 00-4p, "[t]he DOT lists maximum requirements of a particular job as it is performed in specific settings."  SSR 00-4p, 2000 WL 1898704, at *3.  Accordingly, a vocational expert "may be able to provide more specific information about a job or occupation than the DOT." *Id.*  In this case, the

---

[5]   Although the vocational expert did not specifically state that the 90 percent erosion in the occupational base was due to plaintiff's various limitations, such a conclusion is reasonably inferred.   *See* Light, 119 F.3d at 793 (noting that "[e]vidence sufficient to permit . . . a deviation [between the vocational expert's testimony and the DOT] may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony")(citations omitted); *see also* Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)(noting that an ALJ is entitled to draw inferences logically flowing from the evidence).

13

vocational expert did just that. With respect to plaintiff's walking/standing limitations and any alleged deviation with the DOT, the vocational expert testified that the particular security guard positions that plaintiff could perform -- *to wit*, a security guard position at an industrial or commercial site with a 90 percent erosion -- typically would involve sitting in a car. Because plaintiff's RFC includes no limitations with respect to sitting, there is no conflict. Similarly, with respect to plaintiff's RFC limitation to "non-public work" and the DOT requirement of warning violators of rule infractions and apprehending or expelling miscreants, the vocational expert testified that the security guard position would not require plaintiff to chase or approach members of the public. Rather, plaintiff only would be required to notify the police.[6]

Lastly, contrary to plaintiff's contention, there is no inconsistency between the level three reasoning required for the position of security guard and plaintiff's RFC limitation to simple

---

[6]   Plaintiff claims that, in explaining the requirements of the job, the vocational expert's explanation "appeared to go to the underlying nature of the job -- it is not well paid -- rather than address the distinction between sitting in a car and walking the premises or working out of a guard shack." (Joint Stip. at 7.) However, when asked whether the security guard position identified by the vocational expert required plaintiff to "approach and confront or address people from the public that may look like they shouldn't be there," the vocational expert responded that "that's not actually the way [the job] is performed. It would be making a call to the police." (A.R. 49.) When further questioned whether there was any interaction between the security guard and the public, the vocational expert testified "that is not a requirement of a job where one is, is earning minimum wage . . . . It would be to notify." (*Id.*) Thus, while the vocational expert does make reference to the fact that the industrial or construction site security guard job earns minimum wage, the vocational expert also clearly testified that the job, as actually performed, only involves notifying the police, not approaching, confronting, and/or addressing the public. Accordingly, plaintiff's claim is unpersuasive.

tasks.  According to the DOT, the job of security guard requires level three reasoning skills.  The DOT defines level 3 reasoning skills as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  DOT Appendix C, Section III, 1991 WL 688702.

Currently, there is a split among the circuit courts on whether a limitation to simple, repetitive tasks is compatible with the performance of jobs with a level three reasoning as defined in the DOT. Adams v. Astrue, 2011 WL 1833015 (N.D. Cal. May 13, 2011)(*comparing* Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(a surveillance systems monitor job with a DOT reasoning level of three was not suitable for a claimant whose RFC limited her to "simple and routine work tasks") *with* Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009)(a claimant limited to "simple" work could perform the job of surveillance systems monitor, which had a reasoning level of three) *and* Renfrow v. Astrue, 496 F.3d 918, 920-21 (8th Cir. 2007)(a claimant with an inability to do "complex technical work" was not precluded from jobs with a reasoning level of three)).  Although the Ninth Circuit has yet to address this question directly, the weight of authority in this Circuit holds that a limitation to simple, *repetitive* tasks is incompatible with a reasoning level of three.[7]

_____

[7]     As noted by the court in Torrez v. Astrue, 2010 WL 2555847 (E.D. Cal. June 21, 2010):

> Several district court cases in this circuit question whether a claimant limited to simple, repetitive tasks, is capable of performing jobs requiring level three reasoning under the DOT. In McGensy v. Astrue, 2010 WL 1875810 (C.D. Cal. May 11, 2010), the Court noted that while case law has held that "a

Critically, however, there is no such similar weight of authority in this Circuit when plaintiff, as in this case, is limited to *only* simple tasks, as opposed to simple *and* repetitive tasks.  In <u>Funches v. Astrue</u>, for example, the district court was faced with this very issue. 2011 U.S. Dist. LEXIS 44789 (E.D. Cal. April 19, 2011).  Although the court did not cite any authority directly on point, it reasoned that "[g]iven the significant case law within [the Ninth] Circuit that questions whether a claimant limited to simple, repetitive work is capable of performing jobs with a Reasoning Level of 3, the [c]ourt [would] not reach a different conclusion simply because Plaintiff's RFC does not include a limitation to repetitive work."  *Id.* at *14.

The court noted that, under these circumstances, the ALJ is required to determine whether a conflict exists and, if so, "'whether

---

limitation to 'simple, repetitive tasks' is consistent with level two reasoning," this restriction is "inconsistent" with the requirements for level three reasoning, in particular the job of *mail clerk*. *Id.* at *3 (citing <u>Pak v. Astrue</u>, 2009 WL 2151361 at *7 (C.D. Cal. July 14, 2009)("The Court finds that the DOT's Reasoning Level three requirement conflicts with the ALJ's prescribed limitation that Plaintiff could perform only simple, repetitive work"); <u>Tudino v. Barnhart</u>, 2008 WL 4161443 at *11 (S.D. Cal. Sept. 5, 2008)("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"; remand to ALJ to "address the conflict between Plaintiff's limitation to 'simple, repetitive tasks' and the level-three reasoning"); <u>Squier v. Astrue</u>, 2008 WL 2537129 at *5 (C.D. Cal. June 24, 2008)(reasoning level three is "inconsistent with a limitation to simple repetitive work")). In addition, in <u>Bagshaw v. Astrue</u>, 2010 WL 256544 at *5 (C.D. Cal. January 20, 2010), the court expressly cited <u>Hackett [v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005)] in concluding that a *mail clerk* job, which requires level three reasoning under the DOT, was "inconsistent with [plaintiff's] intellectual functional capacity limitation to simple, routine work."

2010 WL 2555847, at *8-*9 (finding that the "DOT precludes a person restricted to simple, repetitive tasks, from performing work . . . that requires level three reasoning).

1  the vocational expert's explanation for the conflict is reasonable and

2  whether a basis exists for relying on the expert rather than the

3  [DOT].'"   Funches, 2011 U.S. Dist. LEXIS 44789, at *15 (citations

4  omitted).   However, while the ALJ stated that the testimony of the

5  vocational expert was consistent with the DOT and concluded that

6  plaintiff could perform other work, the court found that there was "no

7  indication in either the testimony or the interrogatories . . . that the

8  ALJ asked the [vocational expert] whether a conflict existed." Id. at

9  *16.   Because the ALJ did not pose this question to the vocational

10 expert, the court found that it could not determine whether substantial

11 evidence supported the ALJ's determination that plaintiff could perform

12 other work.   Id.   Therefore, the court remanded the case and

13 specifically directed the ALJ to "obtain a reasonable explanation from

14 the [vocational expert] for the conflict between her testimony and the

15 DOT." Id. at *17.

16

17     Here, unlike in Funches, the ALJ twice confirmed that the

18 vocational expert's testimony was consistent with the DOT.  Further, the

19 vocational expert specifically testified that plaintiff's limitation to

20 simple tasks did not preclude his performance of the industrial or

21 construction site security guard job -- a job which requires level three

22 reasoning skills.   In explaining plaintiff's capacity to do such work,

23 the vocational expert noted that the ALJ had not restricted plaintiff

24 to "repetitive work," and the specific requirements of the job did not

25 involve writing reports.[8]  As such, in this case, there was no apparent

26 _____

27     [8]    To the extent plaintiff relies on Stroda v. Astrue, 2010 WL
   129814 (W.D. Wash. Jan. 11, 2010) and claims that the vocational expert
28 improperly focused on the SVP score of the security guard job when
   concluding that plaintiff's limitation to simple tasks was not

conflict between plaintiff's limitation to simple tasks and his ability to perform jobs requiring level three reasoning.[9]  However, even if there were such a conflict, the vocational expert provided persuasive testimony to support her conclusion that plaintiff could perform the job of security guard at an industrial or construction site notwithstanding his limitations.

Thus, the vocational expert's testimony regarding the specific requirements of the security job at an industrial or construction site, after a 90 percent erosion, provides a sufficient rationale to support any purported deviation/inconsistency between the vocational expert's testimony and the DOT.  As such, any error committed by the ALJ in failing to address any apparent conflict was harmless.  Accordingly, the ALJ did not commit reversible error in relying on the vocational expert's testimony concerning plaintiff's ability to perform his PRW, and remand is not warranted.

///

///

///

inconsistent with a security guard job, plaintiff's claim is unpersuasive.  First, prior to testifying about the SVP score of a security guard, the vocational expert testified that a limitation to simple tasks does not impact the ability to perform the job of an industrial or construction site security guard.  Second, there is no indication that the vocational expert relied on the SVP for the job of security guard to justify her finding.  Rather, it appears that the vocational expert was attempting to further explain her finding that plaintiff's limitation to simple tasks alone does not impact his ability to perform the job of security guard.

[9]   Moreover, and perhaps telling, plaintiff does not identify any level three reasoning skill that he is unable to perform as a result of his limitation to simple tasks.  Rather, plaintiff generally contends that his limitation to simple tasks is incompatible with the performance of a job requiring level three reasoning.

18

1    **CONCLUSION**

2

3        For the foregoing reasons, the Court finds that the Commissioner's

4    decision is supported by substantial evidence and is free from material

5    legal error.  Neither reversal of the Commissioner's decision nor remand

6    is warranted.

7

8        Accordingly, IT IS ORDERED that Judgment shall be entered affirming

9    the decision of the Commissioner of the Social Security Administration.

10   IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

11   this Memorandum Opinion and Order and the Judgment on counsel for

12   plaintiff and for defendant.

13

14       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

15

16   DATED:   October 25, 2011

17

18                                      _____
                                         MARGARET A. NAGLE
19                                       UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

19